1 | MOLLY M. WHITE, Cal. Bar No. 171448
Email: whitem@sec.gov
2 | J. CINDY ESON, Cal. Bar No. 219782
Email: esonjc@sec.gov

3 | Attorneys for Plaintiff
4 | Securities and Exchange Commission
Michele Wein Layne, Associate Regional Director
5 | John W. Berry, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
6 | Los Angeles, California 90036
Telephone: (323) 965-3998
7 | Facsimile: (323) 965-3908

**ORIGINAL**

FILED
CLERK U.S. DISTRICT COURT

APR 11 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                    JP    DEPUTY

8 |                    **UNITED STATES DISTRICT COURT**

9 |                    **CENTRAL DISTRICT OF CALIFORNIA**

10 |

11 | SECURITIES AND EXCHANGE          Case No. CV12-03142 JHN (PLAx)
COMMISSION,
12 |                                  **DECLARATION OF CAMERON**
Plaintiff,
13 |                                  **YADIDI BROCK**
vs.
14 |
SHERVIN NEMAN, NEMAN
15 | FINANCIAL, INC.

16 |            Defendants,

17 | CASSANDRA C. NEMAN,

18 |            Relief Defendant.

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

I, Cameron Yadidi Brock, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I have personal knowledge of the matters set forth herein and, if called as a witness, could and would competently testify under oath hereto.

2. I submit this declaration at the request of the United States Securities and Exchange Commission ("Commission").

3. I am over 21 years old and reside in Beverly Hills, CA.

4. I am an attorney specializing in personal injury cases. I have been licensed in the State of California since 1996 and maintain my own law practice in Sherman Oaks, CA.

5. I met Shervin Neman (also known as Shervin Davatgarzadeh) through a mutual friend, who had referred to Mr. Neman to me. Mr. Neman telephoned me and introduced himself. He said was in the stock, bond, and investment business.

6. Sometime in or about November 2010, Mr. Neman asked me to invest in the General Motors ("GM") initial public offering ("IPO"). On November 16, 2010, Mr. Neman, sent me an e-mail that stated, "I have raised $5,000,000 to buy the GM IPO, along with $4,000,000 that I am putting from the hedge fund money." He attached a sample contract to the e-mail, which he said "was sent to one of my clients who has transferred the money." A true and correct copy of the November

1

16, 2010 e-mail and attachment I received from Mr. Neman are attached hereto as Government Exhibit 24.

7. After reviewing Mr. Neman's e-mail and the sample contract, I telephoned Mr. Neman and told him I was not interested in the GM IPO. Mr. Neman then said that he also invested in foreclosed properties and quickly resold them.

8. Specifically, Mr. Neman told me about an opportunity to invest in 25 foreclosed homes in Orange County, CA. He said that a bank was selling the homes and that he already had a signed contract with the buyer. I told him I was interested in real estate and that I might be willing to invest in the deal, provided that he furnished specific details about the properties.

9. Mr. Neman told me that the total investment in the properties was about $4 million. He said he had set up a fund, Neman Financial, LP, to purchase the property and that he already had other investors who put up most of the money, but that he still needed another $700,000 to proceed with the purchase.

10. Mr. Neman then sent me an e-mail about the 25 foreclosed homes on November 19, 2010. He attached a promissory note from Neman Financial LP, defined as the "General Partner," in favor of an unnamed investor in the amount of $700,000. The note matured in four months and paid a fixed interest of 14%, yielding a return of $98,000. A true and correct copy of the November 19, 2010

e-mail and attachment I received from Mr. Neman is attached hereto as Government Exhibit 25.

11. During our telephone conversations and in a subsequent face-to-face meeting, Mr. Neman claimed to have prominent members of the Persian community as clients. For example, he said had worked with the former mayor of Beverly Hills, Jimmy Delshad, and dropped his name several times.

12. On November 22, 2010, I e-mailed Mr. Neman and asked him to send me the names of clients he had served in the past year. Mr. Neman replied and provided a couple of names of individuals, adding that "Mr. Jimmy Delshad is looking to come into the hedge fund as a consultant, pending few negotiations." A true and correct copy of my e-mail exchange with Mr. Neman is attached hereto as Government Exhibit 26.

13. On December 1, 2010, Mr. Neman came to my law office in Sherman Oaks to make a presentation regarding this proposed investment in the 25 foreclosed properties. At the meeting, Mr. Neman showed me information on 10 to 20 of the foreclosed properties, and I checked the address of each one on the real estate website, zillow.com, while Mr. Neman was in my office. All the properties appeared to be in good locations. Mr. Neman refused to leave the information about the foreclosed properties with me, explaining that it was confidential, but he assured me that I would receive the information after I had invested.

14.     I told Mr. Neman at the meeting that I would invest in the deal. Based on Mr. Neman's representations and the returns he promised, I decided to invest $700,000 and provide the remaining funds that Mr. Neman said he needed to purchase the 25 foreclosed properties from the bank.

15.     Later that day, Mr. Neman e-mailed me the wiring instructions for the Neman Financial LP account at JP Morgan Private Bank. A true and correct copy of the wiring instructions I received from Mr. Neman is attached hereto as Government Exhibit 27.

16.     On Friday, December 3, 2010, I instructed my bank to wire $700,000 from my account to the Neman Financial, LP account at JP Morgan Private Bank, per Mr. Neman's instructions.

17.     Later that day, however, Mr. Neman advised me that the $700,000 would be returned to my bank on Monday due to a mistake at JP Morgan Private Client Services. He told me that on Monday, I should instead wire the funds to a Neman Financial, LP account at Morgan Stanley, and he provided me with new wiring instructions.

18.     Over that weekend, I e-mailed Mr. Neman and asked him to provide his purchase agreement with the bank, the sales agreement with the buyer, and proof of funds from Neman Financial, LP, but he refused. He claimed that he could get sued by the bank and the buyer because he had signed a non-disclosure

4

agreement. I nevertheless insisted that he Mr. Neman provide the documents as he had promised, and he finally agreed to send me the purchase agreement with the bank. True and correct copies of my e-mail exchanges with Mr. Neman regarding the $700,000 wire and the purchase and sale agreements are attached hereto as Government Exhibits 28 and 29.

19. On the morning of Monday, December 6, after my bank confirmed that the original $700,000 wire had been returned to my account, I instructed my bank to wire $700,000 to the Neman Financial, LP account at Morgan Stanley, per Mr. Neman's instructions. I wanted to ensure that my funds arrived timely because Mr. Neman had said that the deal was supposed to start that day "so time was of the essence."

20. On Monday afternoon, I received a call from one of my clients, Dr. Hamid Mirshojae. Dr. Mirshojae told me he thought he had been the victim of securities fraud. He explained that he had previously invested $350,000 in foreclosed houses in Orange County, but when his principal and interest payment came due, the check he received bounced. When I asked Dr. Mirshojae for the name of the person he had invested with, he said "Shervin Neman."

21. I immediately contacted my bank and instructed them to recall my $700,000 wire to the Neman Financial, LP account at Morgan Stanley. My bank successfully recalled the wire and the funds were credited back to my account.

22.    I then assisted Dr. Mirshojae in obtaining the return of his funds from Mr. Neman.

23.    I also investigated Mr. Neman and learned that his last name was not really "Neman" but that it was "Davatgarzadeh."

24.    In addition, I contacted Mr. Delshad and he told me that he never had any involvement with Neman Financial, LP.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4 day of ~~March~~ April 2012 in Beverly Hills, CA.


Cameron Yadidi Brock

**Exhibit 24**

**From:**          Shervin Neman [shervin@nemanfinancial.com]
**Sent:**          Tuesday, November 16, 2010 12:04 AM
**To:**            cameron@yadidi.com
**Subject:**       FW: GM IPO contract
**Attachments:**   note, GM stocks.doc

Dear Cameron jan,

Pleasure talking to you. I have attached a sample contract that was sent to one of my clients who has transferred the money. I have raised $5,000,000 to buy the GM IPO, along with $4,000,000 that I am putting from the hedge fund money. Please let me know ASAP as the money has to be in the account by 12 PM Tuesday Nov. 16th.

Sincerely,

*Shervin Neman*
*Neman Financial, LP*
*CEO*
*1875 Century Park East, Ste 600*
*LA, CA 90067*
*T: 310-284-6859*
*F: 310-388-4653*
*cell: 310-498-1873*
*www.NemanFinancial.com*

**CONFIDENTIALITY STATEMENT** - This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, YOU ARE HEREBY NOTIFIED that any dissemination, distribution or copying of this communication is strictly prohibited. If you are not the intended recipient of this message, please destroy the printed version and delete this email.

1



Exhibit 24 Page 7



1875 Century Park East•6th Floor• Los Angeles• California 90067
(310) 284-6859 Office • (310) 388-4653 Fax

## PROMISSORY NOTE

General Partner:   Neman Financial LP                    Investor:
                   1875 Century Park East
                   Los Angeles, CA  90067

Principal Amount: $1,000,000.00 Date of Note: November 15th, 2010 PROMISE TO PAY. Neman Financial, LP ("General Partner") promises to pay to ("Investor"), or order, in lawful money of the United States of America, the principal amount, or whatever left, and interest made, if any, on the GM IPO.

PAYMENT. General Partner will pay this Investment in one payment of principal or whatever left plus all Interest made, if any, on November 15th, 2011. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid Interest; then to principal; then to any unpaid collection costs; and then to any late charges. General Partner will pay Investor at Investor's address shown above or at such other place as Investor may designate.

INTEREST RATE. The interest rate on this Note will change for the period of the Investment due to the volatility of the market.

LATE CHARGE. If the payment is 10 days or more late, General Partner will be charged 10.000% of the regularly scheduled payment or $500.00, whichever is greater

INTEREST AFTER DEFAULT. Upon default, the interest rate on this Note shall, If permitted under applicable law, Immediately Increase by adding a 7.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding Interest rate change that would have applied had there been no default.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note: .Payment,

  Default. General Partner fails to make any payment when due under this Note.

  Other Defaults. General Partner fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note.

  Default in Favor of Third Parties. General Partner or any Guarantor defaults under any Investment, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of General Partner's property or General Partner's ability to repay this Note or perform General Partner's obligations under this Note.

False Statements. Any warranty, representation or statement made or furnished to Investor by General Partner or on General Partner's behalf under this Note if false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

  Insolvency. The dissolution or termination of General Partner's existence as a going business, the Insolvency of General Partner, the appointment of a receiver for any part of General Partner's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against General Partner.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or foreclosure proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of General Partner or by any governmental agency against any collateral securing the Investment. This includes a garnishment of any of General Partner's accounts, including deposit accounts, with Investor. However, this Event of Default shall not apply if and if General Partner gives Investor written notice of the creditor or forfeiture proceeding and deposits with Investor monies or a surety bond for the creditor or forfeiture proceeding, In an amount determined by Investor, In this sale discretion, as being an adequate reserve or bond for the dispute.

  Events Affecting Guarantor. Any of the preceding *events* occurs with respect to any Guarantor on any of the indebtedness or any Guarantor dies or becomes incompetent revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

  Change In Ownership. Any change in ownership of fifty-one percent (51%) or more of the common stock of Neman Financial LP. Adverse Change. A material adverse change occurs in General Partner's financial condition.

  Cure Provisions. If any default, other than a default in payment Is curable, It may be cured if General Partner, after receiving written notice from Investor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) If the cure requires more Than fifteen (15) days, Immediately Initiates steps which Investor deems In Investor's sale discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

INVESTOR'S RIGHTS. Upon default, Investor may declare the entire unpaid principal balance under this Note and all accrued unpaid Interest Immediately due, and Then General Partner will pay that amount.

ATTORNEYS' FEES; EXPENSES. Investor may hire or pay someone else to help collect this Note if General Partner does not pay. General Partner will pay Investor that amount. This Includes, subject to any limits under applicable law, Investor's attorneys' fees' and Investor's legal expenses, whether or not there is a

1 | P a g e

Exhibit 24 page 8



**1875 Century Park East 6th Floor Los Angeles California 90067**
**(310) 284-6859 Office (310) 388-4653 Fax**

---

lawsuit, Including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or Injunction), and appeals. General Partner also will pay any court costs in addition to all other sums provided by law.

General Partner acknowledges this money to be used for buying the GM stocks only.

ARBITRATION. General Partner and Investor agree that all disputes, claims and controversies between them whether Individual, joint, or class in nature; arising from this otherwise, including without contract and/or disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association In effect and the time the claim Is filed, upon request of either party; No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without Limitation, obtaining Injunctive for a temporally restraining order invoking a power of sale under any, deed of trust or mortgage; obtaining write of attachment or exercising any right to personal property, Including taking or disposing of such. Any disputes, claims, or controversies concerning the lawfulness, or exercise any right; concerning any collateral securing this Note, Including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided that no arbitrator shall have the right or the power to enforce restrain on any party. General Partner and Investor agree that In the event action for Judicial foreclosure; Pursuant to California Code of Civil Procedure Section 726, or any similar provision In any other state, the commencement of such Walling of constitution waver of the right to; arbitrate and the court shall refer to arbitration as much of such action, may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having Jurisdiction. This Note shall preclude any party from seeking equitable relief from a court of competent Jurisdict6ion. The statute of limitations, estoppels, waiver, latches, and Similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitral Investment provision.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon General Partner, and upon General Partner's heirs, personal representatives, successors and assigns, and shall insure to the benefit of Investors and successors and assigns.

GENERAL PROVISIONS.

The          obligations          under          this          Note          are          Joint          and          several.

Exhibit 24 Page 9



1875 Century Park East, 6th Floor, Los Angeles, California 90067
(310) 284-6859 Office , (310) 388-4653 Fax

"PRIOR TO SIGNING THIS NOTE, GENERAL PARTNER & INVESTOR READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. GENERAL PARTNER & INVESTOR AGREE TO THE TERMS OF THE NOTE"

"GENERAL PARTNER & INVESTOR ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE."

**GENERAL PARTNER:**

Neman Financial, LP

BY:

MR. SHERVIN NEMAN, President/CEO of Neman Financial, LP

**INVESTOR:**

By:

**Exhibit 25**

**From:** Shervin Nemar ['shervin@nemanfinancial.com]
**Sent:** Friday, Novem    '19, 2010 6:39 PM
**To:** cameron@yadidi.com
**Subject:** the deal
**Attachments:** Note (25 OC houses).doc

Dear Cameron jan,

It was nice talking to you again. These are 25 foreclosed houses in OC, CA that we are buying at 170,000 and selling to a committed buyer, the buyer has already signed a contract to buy these houses and I have done several deals with him. Prior to this deal, the same buyer has bought packages of 15, 10, 75 and 100 houses from me. Out of the 4.25 mil for the 25 houses deal, 2.5 mil is the money from the hedge fund, Goldman Sachs has referred a client that has already invested a million dollars for the deal and looking to bring in a new client for 700,000. Let me know please if you are interested. To know more about me and my background, please check out my website!

Sincerely,


*Shervin Neman*
*Neman Financial, LP*
*CEO*
*1875 Century Park East, Ste 600*
*LA, CA 90067*
*T: 310-284-6859*
*F: 310-388-4653*
*cell: 310-498-1873*
*www.NemanFinancial.com*

**CONFIDENTIALITY STATEMENT** – This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, YOU ARE HEREBY NOTIFIED that any dissemination, distribution or copying of this communication is strictly prohibited. If you are not the intended recipient of this message, please destroy the printed version and delete this email.



1

Exhibit 25 Page 11



1875 Century Park East•6th Floor• Los Angeles• California 90067
(310) 284-6859 Office •(310) 388-4653 Fax

## PROMISSORY NOTE

General Partner:   Neman Financial LP            Investor:
1875 Century Park East
Los Angeles, CA  90067

**Principal Amount: $700,000.00 Date of Note: November 19th, 2010 PROMISE TO PAY.** Neman Financial, LP ("General Partner") promises to pay to ("Investor"), or order, in lawful money of the United States of America, the principal amount of Seven Hundred Thousand & 00/100 Dollars ($700,000.00) together with interest on the unpaid outstanding principal balance. Interest shall be Ninety Eight Thousand & 00/100 Dollars ($98,000.00) in total.

**PAYMENT.** General Partner will pay this Investment in one payment of all outstanding principal plus all accrued unpaid Interest on or before March 25th, 2011. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid Interest; then to principal; then to any unpaid collection costs; and then to any late charges. General Partner will pay Investor at Investor's address shown above or at such other place as Investor may designate.

**FIXED INTEREST RATE.** The interest rate on this Note won't change for the period of the Investment; it will be at 14% for the entire duration of the Investment.

**LATE CHARGE.** If the payment is 10 days or more late, General Partner will be charged 10.000% of the regularly scheduled payment or $500.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, If permitted under applicable law, Immediately Increase by adding a 7.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding Interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note: .Payment,

Default. General Partner fails to make any payment when due under this Note.

Other Defaults. General Partner fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note.

Default in Favor of Third Parties. General Partner or any Guarantor defaults under any Investment, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of General Partner's property or General Partner's ability to repay this Note or perform General Partner's obligations under this Note.

False Statements. Any warranty, representation or statement made or furnished to Investor by General Partner or on General Partner's behalf under this Note if false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any lime thereafter.

Insolvency. The dissolution or termination of General Partner's existence as a going business, the Insolvency of General Partner, the appointment of a receiver for any part of General Partner's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against General Partner.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or foreclosure proceedings, whether by judicial proceeding. self-help, repossession or any other method, by any creditor of General Partner or by any governmental agency against any collateral securing the Investment. This includes a garnishment of any of General Partner's accounts, including deposit accounts, with Investor. However, this Event of Default shall not apply if and if General Partner gives Investor written notice of the creditor or forfeiture proceeding and deposits with Investor monies or a surely bond for the creditor or forfeiture proceeding, In an amount determined by Investor, In this sale discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding *events* occurs with respect to any Guarantor on any of the indebtedness or any Guarantor dies or becomes incompetent revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note;

Change In Ownership. Any change in ownership of fifty-one percent (51%) or more of the common stock of Neman Financial LP. Adverse Change. A material adverse change occurs in General Partner's financial condition.

Cure Provisions. If any default, other than a default in payment Is curable, It may be cured if General Partner, after receiving written notice from Investor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) If the cure requires more Than fifteen (15) days, Immediately Initiates steps which Investor deems In Investor's sale discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**INVESTOR'S RIGHTS.** Upon default, Investor may declare the entire unpaid principal balance under this Note and all accrued unpaid Interest Immediately due, and Then General Partner will pay that amount.

1 | P a g e

Exhibit 25   Page 12



1875 Century Park East⬧6th Floor⬧ Los Angeles⬧ California 90067
(310) 284-6859 Office ⬧ (310) 388-4653 Fax

ATTORNEYS' FEES; EXPENSES. Investor may hire or pay someone else to help collect this Note if General Partner does not pay. General Partner will pay Investor that amount. This Includes, subject to any limits under applicable law, Investor's attorneys' fees' and Investor's legal expenses, whether or not there is a lawsuit, Including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or Injunction), and appeals. General Partner also will pay any court costs in addition to all other sums provided by law.

COLLATERAL. General Partner acknowledges this Note Is secured by the following collateral: 25 Single Family Residents in Orange County, CA. The entire investment to buy the houses in Orange County, CA will not exceed $4,250,000.00. General Partner is using 3,550,000.00 of the money available in the Neman Financial LP account to purchase the houses along with the 700,000.00 from the investor. The houses are going to be sold to a committed buyer General Partner has a relationship with.

**General Partner agrees to be liable for all sums.**

ARBITRATION. General Partner and Investor agree that all disputes, claims and controversies between them whether Individual, joint, or class in nature; arising from this otherwise, including without contract and/or disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association In effect and the time the claim Is filed, upon request of either party; No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without Limitation, obtaining Injunctive for a temporally restraining order invoking a power of sale under any, deed of trust or mortgage; obtaining write of attachment or exercising any right to personal property, Including taking or disposing of such. Any disputes, claims, or controversies concerning the lawfulness, or exercise any right; concerning any collateral securing this Note, Including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided that no arbitrator shall have the right or the power to enforce restrain on any party. General Partner and Investor agree that In the event action for Judicial foreclosure; Pursuant to California Code of Civil Procedure Section 726, or any similar provision In any other state, the commencement of such Walling of constitution waver of the right to; arbitrate and the court shall refer to arbitration as much of such action, may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having Jurisdiction. This Note shall preclude any party from seeking equitable relief from a court of competent Jurisdict6ion. The statute of limitations, estoppels, waiver, latches, and Similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitral Investment provision.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon General Partner, and upon General Partner's heirs, personal representatives, successors and assigns, and shall insure to the benefit of Investors and successors and assigns.

GENERAL PROVISIONS.

The         obligations         under         this         Note         are         Joint         and         several.



1875 Century Park East 6th Floor Los Angeles California 90067
(310) 284-6859 Office (310) 388-4653 Fax

"PRIOR TO SIGNING THIS NOTE, GENERAL PARTNER & INVESTOR READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. GENERAL PARTNER & INVESTOR AGREE TO THE TERMS OF THE NOTE"

"GENERAL PARTNER & INVESTOR ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE."

GENERAL PARTNER:

Neman Financial, LP

BY:

MR. SHERVIN NEMAN, President/CEO of Neman Financial, LP

INVESTOR:

By:

Exhibit 25 page 14

**Exhibit 26**

**From:** Shervin Ner﹍ᴺ [shervin@nemanfinancial.com]
**Sent:** Monday, Nc ﹍nber 22, 2010 10:35 AM
**To:** cameron@yadidi.com
**Subject:** RE: the deal

I have put together couple of the clients; Mr. Shahab Mesrian 310-592-3164 and Mr. Igor bershadsky 310-999-4467. Also Mr. Jimmy Delshad is looking to come into the hedge fund as a consultant, pending few negotiations. Thanks,

*Shervin Neman*
*Neman Financial, LP*
*CEO*
*1875 Century Park East, Ste 600*
*LA, CA 90067*
*T: 310-284-6859*
*F: 310-388-4653*
*cell: 310-498-1873*
*www.NemanFinancial.com*

**CONFIDENTIALITY STATEMENT - This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, YOU ARE HEREBY NOTIFIED that any dissemination, distribution or copying of this communication is strictly prohibited. If you are not the intended recipient of this message, please destroy the printed version and delete this email.**

---

**From:** cameron@yadidi.com [mailto:cameron@yadidi.com]
**Sent:** Monday, November 22, 2010 8:01 AM
**To:** Shervin Neman
**Subject:** Re: the deal

I need some reference names and numbers of people whom you have served in the past year. Thanks. I'm interested on the deal depending on ur references

Sent from my Verizon Wireless BlackBerry

---

**From:** "Shervin Neman" <shervin@nemanfinancial.com>
**Date:** Fri, 19 Nov 2010 18:38:36 -0800
**To:** <cameron@yadidi.com>
**Subject:** the deal

Dear Cameron jan,

It was nice talking to you again. These are 25 foreclosed houses in OC, CA that we are buying at 170,000 and selling to a committed buyer, the buyer has already signed a contract to buy these houses and I have done several deals with him. Prior to this deal, the same buyer has bought packages of 15, 10, 75 and 100 houses from me. Out of the 4.25 mil for the 25 houses deal, 2.5 mil is the money from the hedge fund, Goldman Sachs has referred a client that has already invested a million dollars for the deal and looking to bring in a new client for 700,000. Let me know please if you are interested. To know more about me and my background, please check out my website!

Sincerely,

·1



GOVERNMENT EXHIBIT 26

Exhibit 26 Page 15

*Shervin Neman*
*Neman Financial, LP*
*CEO*
*1875 Century Park East, Ste 600*
*LA, CA 90067*
*T: 310-284-6859*
*F: 310-388-4653*
*cell: 310-498-1873*
*www.NemanFinancial.com*

CONFIDENTIALITY STATEMENT - This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, YOU ARE HEREBY NOTIFIED that any dissemination, distribution or copying of this communication is strictly prohibited. If you are not the intended recipient of this message, please destroy the printed version and delete this email.

Exhibit 26  Page 16

**Exhibit 27**

**From:**            Shervin Nen    [shervin@nemanfinancial.com]
**Sent:**             Wednesday, December 01, 2010 3:29 PM
**To:**                cameron@yadidi.com
**Subject:**         wiring instructions

**Follow Up Flag:**    Follow up
**Flag Status:**      Flagged

Here is the wiring instructions for Neman Financial LP account at JP Morgan Private Bank sir. Looking forward to a long term relationship.

JPMorgan Chase bank, N.A.
500 Stanton Christiana Rd
Newark, DE 19713
ABA # 021 000 021
Account is Neman Financial LP # ██████4000

Sincerely,

*Shervin Neman*
*Neman Financial, LP*
*CEO*
*1875 Century Park East, Ste 600*
*LA, CA 90067*
*T: 310-284-6859*
*F: 310-388-4653*
*cell: 310-498-1873*
*www.NemanFinancial.com*

**CONFIDENTIALITY STATEMENT -** This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, YOU ARE HEREBY NOTIFIED that any dissemination, distribution or copying of this communication is strictly prohibited. If you are not the intended recipient of this message, please destroy the printed version and delete this email.

1



Exhibit 27  Page 17

**Exhibit 28**

**From:**          shervin@nemanfinancial.com
**Sent:**          Sunday, December 05, 2010 7:57 PM
**To:**            cameron@yadidi.com
**Subject:**       Re: Update-The Deal

Sorry I just got your email and text. How can I give you the purchase/sale agreement with the bank and the buyer? Their name will be revealed and I will run the risk of getting sued by them as I have signed NDA. My word and my reputation is everything for me in my business. I want to have a long term relationship with both the bank and the seller and also my clients. As I explained when we met on Wed., I don't even show the house addresses to my other clients/investors. I can only show so much sir and of course I am planning to have a long term relationship with ya and get referred to your friends/colleagues for the work I do, not screw anyone. Let me know. Thanks.

Sent via BlackBerry by AT&T

---

**From:** cameron@yadidi.com
**Date:** Mon, 6 Dec 2010 03:34:02 +0000
**To:** Shervin Neman<shervin@nemanfinancial.com>
**ReplyTo:** cameron@yadidi.com
**Subject:** Re: Update-The Deal

Ok.

Please forward a copy of your purchase agreement of the deal with the bank by tomorrow morning and also a copy of the proof of fund fropm your company and Morgan stanley client. Also the sale agreement with the buyer. Thanks

Sent from my Verizon Wireless BlackBerry

---

**From:** "Shervin Neman" <shervin@nemanfinancial.com>
**Date:** Sun, 05 Dec 2010 20:22:23 -0700
**To:** <cameron@yadidi.com>
**Subject:** Update-The Deal

Dear Cameron Jan,

As I told you on Friday, The $700,000.00 will be returned to your account due to a mistake made at JP Morgan Private Client Services.
I have been advised that it should hit your account on Monday.
This deal is supposed to start on Monday, so time is of the essence to turn it around.
As I know you can relate, I require excellent service from the people that I work with.
Due to the mistake on Friday, I have decided to use Morgan Stanley Private Client services to move forward with this deal.

1



Exhibit 28 Page 18

Please advise your banker at City National Bank to look for the wire coming back to your account so we can finish the ( )l on time.

Here are the wiring instructions for Morgan Stanley Private Client Services:

Bank: Citibank, New York
111 Wall Street, New York, NY 10043-0001
ABA: 021000089
For Benefit Of: **Morgan Stanley & Co. Incorporated**
Beneficiary Account: ▉▉▉1172
SWIFT Code: CITI US 33
For Further Credit to: ▉▉▉▉▉▉3-132 (Neman Financial LP)

Please let me know as soon as you confirm the money is back into your account. Ideally, your banker will wire the money to Morgan Stanley right away, so that there is no more time lost.

I will confirm with you once your money is received by Morgan Stanley and keep you updated with the deal as it progresses.

I apologize for the confusion and thank you for your understanding.

I look forward to a long and prosperous business relationship.

Sincerely,

*Shervin Neman*
*Neman Financial, LP*
*CEO*
*1875 Century Park East, Ste 600*
*LA, CA 90067*
*T: 310-284-6859*
*F: 310-388-4653*
*cell: 310-498-1873*
*www.NemanFinancial.com*

**CONFIDENTIALITY STATEMENT – This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, YOU ARE HEREBY NOTIFIED that any dissemination, distribution or copying of this communication is strictly prohibited. If you are not the intended recipient of this message, please destroy the printed version and delete this email.**

Exhibit 28 page 19

**Exhibit 29**

| | |
|---|---|
| **From:** | shervin@ne~ ~nfinancial.com |
| **Sent:** | Monday, De~ ~mber 06, 2010 9:46 AM |
| **To:** | Cameron Yadidi |
| **Subject:** | Re: Update-The Deal |

Give me a little bit sir, in a meeting and once I come out of here I will go to the office and send it. Thanks sir.

Sent via BlackBerry by AT&T

---

**From:** "Cameron Yadidi" <cameron@yadidi.com>
**Date:** Mon, 6 Dec 2010 09:44:04 -0800
**To:** 'Shervin Neman'<shervin@nemanfinancial.com>
**Subject:** RE: Update-The Deal

**Where is the purchase contract from the bank?**

---

**From:** Shervin Neman [mailto:shervin@nemanfinancial.com]
**Sent:** Sunday, December 05, 2010 7:22 PM
**To:** cameron@yadidi.com
**Subject:** Update-The Deal

Dear Cameron Jan,


As I told you on Friday, The $700,000.00 will be returned to your account due to a
mistake made at JP Morgan Private Client Services.
I have been advised that it should hit your account on Monday.
This deal is supposed to start on Monday, so time is of the essence to turn it around.
As I know you can relate, I require excellent service from the people that I work with.
Due to the mistake on Friday, I have decided to use Morgan Stanley Private Client
services to move forward with this deal.

Please advise your banker at City National Bank to look for the wire coming back to your
account so we can finish the deal on time.

Here are the wiring instructions for Morgan Stanley Private Client Services:


Bank: Citibank, New York
111 Wall Street, New York, NY 10043-0001
ABA: 021000089
For Benefit Of: **Morgan Stanley & Co. Incorporated**
Beneficiary Account: 40611172
SWIFT Code: CITI US 33
For Further Credit to: 241-033833-132 (Neman Financial LP)

1



Exhibit 29 Page 20

Please let me know as soon as you confirm the money is back into your account. Ideally, your banker will wire the money to Morgan Stanley right away, so that there is no more time lost.

I will confirm with you once your money is received by Morgan Stanley and keep you updated with the deal as it progresses.

I apologize for the confusion and thank you for your understanding.

I look forward to a long and prosperous business relationship.

Sincerely,

*Shervin Neman*
*Neman Financial, LP*
*CEO*
*1875 Century Park East, Ste 600*
*LA, CA 90067*
*T: 310-284-6859*
*F: 310-388-4653*
*cell: 310-498-1873*
*www.NemanFinancial.com*

**CONFIDENTIALITY STATEMENT – This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, YOU ARE HEREBY NOTIFIED that any dissemination, distribution or copying of this communication is strictly prohibited. If you are not the intended recipient of this message, please destroy the printed version and delete this email.**

2

Exhibit 29 Page 21