1   MOLLY M. WHITE, Cal. Bar No. 171448
    Email: whitem@sec.gov
2   J. CINDY ESON, Cal. Bar No. 219782
    Email: esonjc@sec.gov
3
    Attorneys for Plaintiff
4   Securities and Exchange Commission
    Michele Wein Layne, Associate Regional Director
5   John W. Berry, Regional Trial Counsel
    5670 Wilshire Boulevard, 11th Floor
6   Los Angeles, California 90036
    Telephone: (323) 965-3998
7   Facsimile: (323) 965-3908

8
                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10

11   SECURITIES AND EXCHANGE          Case No. CV12- 03142 JHN (PLAx)
     COMMISSION,
12                                    DECLARATION OF FIROOZ PAK
               Plaintiff,
13
          vs.
14
     SHERVIN NEMAN, and NEMAN
15   FINANCIAL, INC.,

16             Defendants,

17   CASSANDRA C. NEMAN,

18             Relief Defendant.

19

20

21

22

23

24

25

26

27

28

I, Firooz Pak, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.     I have personal knowledge of the matters set forth herein and, if called as a witness, could and would competently testify under oath hereto.

2.     I submit this declaration at the request of the United States Securities and Exchange Commission ("Commission").

3.     I am 42 years old and reside in Marina Del Rey, CA.

4.     I am a medical doctor specializing in internal medicine and nephrology. I have been licensed in the State of California since 2001 and maintain my own medical practice in Los Angeles, CA.

5.     I have known Shervin Neman for approximately two years. My accountant, Sepehr Kamjoo, had initially referred Mr. Neman to me, but Mr. Kamjoo made it clear that he did not know Mr. Neman very well.

6.     Sometime in early 2011, Mr. Neman telephoned me and told me that he was involved with investments, such as initial public offerings ("IPOs") and real estate. Afterwards, we met at a coffee shop near my home a couple of times. During one of our meetings, Mr. Neman told me that he had opportunities to invest in IPOs. One of the companies that Mr. Neman told me about offered a website for doctors that allowed patients to schedule their own appointments online. I told Mr. Neman that I was skeptical of the stock market in general and that I was not

1

interested in investing in that company in particular. Mr. Neman also told me about another IPO, but that didn't interest me either.

7.    Mr. Neman asked me about income and investments. I told him that my annual income exceeded $500,000 and that my net worth was about $1 million. I also told Mr. Neman that  I had had been investing in life insurance and mutual funds for about 10 years, but that I was very wary about investing directly in the stock market, especially given the market volatility over the past few years.

8.    In or about April 2011, Mr. Neman contacted me about investing in a short-term investment that would pay a return of about 12% in just one week. On April 13, 2011, I wired $100,000 to Mr. Neman according to the wire instructions I received from him. He said that the funds were being sent to his company's bank account. About a week later, on April 21, 2011, I received a cashier's check from Mr. Neman in the amount of $112,400 for repayment of my principal investment and $12,400 in interest.

9.    This first profitable investment gave me confidence in Mr. Neman's abilities as an investment manager, and as a result, I felt comfortable investing additional sums of money with him.

10.    Although I still had reservations about investing in the stock market, I met with Mr. Neman again, this time at his office in the Century City area of Los Angeles, to hear about another IPO deal. I brought along my cousin, who is an

2

accountant, and my brother-in-law, who is an experienced investor, so that they could help me evaluate Mr. Neman's latest IPO opportunity. The three of us met with Mr. Neman alone in a conference room in his office. After the meeting, I told Mr. Neman that I was still not interested in investing in the stock market and that I wouldn't participate in the IPO.

11. The next day, Mr. Neman telephoned me about investing in 20 condominiums units in San Diego, CA. Mr. Neman explained that he pools money from investors and uses that money to buy distressed properties and then quickly resells the properties to developers for a profit.

12. Mr. Neman represented that I would receive a return of 10% to 12% in 90 days. I told him I was interested, and on or about May 13, 2011, Mr. Neman faxed me a promissory note issued by Neman Financial, LP ("Neman Fund"), which was listed as the "General Partner." The promissory note, which was signed by Mr. Neman as the president and CEO of Neman Fund, offered an 11% interest rate and promised to repay my $100,000 principal plus $11,000 in interest by August 12, 2011.

13. According to the promissory note, the total investment in the 20 condominium units would not exceed $9 million, my $100,000 was secured by the 20 condominiums, and my funds were being invested along with $8.9 million from

3

Neman Fund. A true and correct copy of the signed promissory note I received from Mr. Neman is attached hereto as Government Exhibit 31.

14.     Based on Mr. Neman's representations and the promised returns, on May 13, 2011, I wired $100,000 to Mr. Neman to invest in the 20 condominium units using the same wire instructions I had previously received from Mr. Neman.

15.     On or about September 27, 2011, I received a personal check from Mr. Neman in the amount of $112,000, drawn on a JPMorganChase Bank account, for repayment of my principal plus $12,000 in interest. The memo portion of the check had the notation, "20-unit SD condominium investment." A true and correct copy of the check I received is attached hereto as Government Exhibit 30.

16.     A few weeks later, Mr. Neman telephoned me at my office and told me about an investment in an apartment complex in Long Beach, CA. Mr. Neman told me that he was acting as an intermediary between the seller and the buyer. He said that the apartment complex was a bank-owned and that he intended to purchase it and then resell it to a developer, with whom he already had a signed agreement.

17.     Mr. Neman indicated that he already had 80% to 90% of the money he needed to purchase the Long Beach apartment complex and that he just needed the remaining 10% to 20% to close the deal. Mr. Neman estimated that I would earn a 10% to 15% return within three or four months.

4

18.     I asked Mr. Neman for specific information about the apartment

complex, but he declined to provide any details.  He said that the information was

"confidential" and that he did not want someone else to come along and purchase

the property he had found.  He told me that he would provide more information

about the apartment complex after I invested my money.

19.     On or about October 21, 2011, Mr. Neman faxed me a promissory

note issued by Neman Financial, LP ("Neman Fund"), which was listed as the

"General Partner."   The promissory note, which was signed by Mr. Neman as the

president and CEO of Neman Fund, offered a 12% interest rate and promised to

repay my $100,000 principal plus $12,000 in interest by April 12, 2011, but this

appears to be a typographical error; the actual due date is April 12, 2012.

20.     According to the promissory note, the investment is not in an

apartment complex but in 300 single-family residences somewhere in California.

The note states that the total investment will not exceed $30 million, my $100,000

is secured by the 300 single-family residences, and my funds are being invested

along with $29,900,000 from Neman Fund.  A true and correct copy of the signed

promissory note I received from Mr. Neman is attached hereto as Exhibit 32.

21.     Based on Mr. Neman's representations, the promised returns, and his

positive track record of returning quick profits, on October 25, 2011, I wired

5

$100,000 to Mr. Neman to invest in the 300 single-family residences using the same wire instructions I had previously received from him.

22.     Mr. Neman contacted me again a couple of months ago and asked me to refer other physicians to him. Since I had only successfully invested with him once or twice before, I declined to refer any other physicians to Mr. Neman. I did not have sufficient experience investing with him or know him well enough to recommend him to others.

23.     On February 22, 2012, I received a letter from the Commission staff inquiring about my investments with Mr. Neman. The following evening, I received a call from Mr. Neman and we had a very brief conversation about the letter I had received. He said that the Commission was conducting a "routine investigation" because of his registration and that it was like a "background check."

6

24. Mr. Neman also assured me that my investment was safe and said that I could get my money back if I wanted to, but I did not immediately ask Mr. Neman to return my investment. After my conversation with him, however, I contacted the Commission staff and provided the information and exhibits contained herein.

*he offered to return*

*(P)* 25. The following day, I contacted Mr. Neman and ~~demanded that~~ he *(P)* return my principal investment of $100,000, which he did in the form of a cashier's check from JPMorgan Chase Bank.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24 day of March 2012 in Los Angeles, CA.

Firooz Pak

**Exhibit 30**

21-Jan-12                                                                  20Jan12-259

**THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION**
**GROUP ID G20Jan12-259**
Sequence number 003890913681  Posting date 27-SEP-11

SHERVIN NEMAN                                              90-7162   41595          175
                                                          3222

                                                          Date  9/26/11

Pay to the order of  Firooz Pak                              $ 112,000.00

One hundred Twelve thousand & 00/100                         Dollars

CHASE ○
JPMorgan Chase Bank, N.A.
www.Chase.com

For  20-Unit SD condominium
        investment

⑆322271627⑆        3957=0175

ENDORSE HERE

CREDITED TO THE ACCOUNT OF
THE WITHIN NAMED PAYEE
LACK OF ENDORSEMENT GUARANTEED
WELLS FARGO BANK, N.A.
AU 65862
AU 65862

DO NOT SIGN / WRITE / STAMP BELOW THIS LINE

AcctNum: 000000000    3957 Amount: 000000011200000
Xerno: 0000000175 PostDate: 20110927 Sequence: 003890913681
BankNum: 0703 AppCode: 0001 Field4: 0000 ImageStat: 05
UDK: 07031109270038909136B1 BOFD: 000000000 CapsRC: PV
TranCode: 000175 RouteTran: 32227162     DocType: 8
EntryNum: 2168 ItemType: P



Exhibit 30 Page 8

**Exhibit 31**



Park East₆6th Floor₀ Los Angeles₀ California 90067
0) 284-6859 Office ₀ (310) 388-4653 Fax

## PROMISSORY NOTE

General Partner:    Neman Financial LP             Investor: Dr. Firooz Pak
                    1875 Century Park East, Ste 600
                    Los Angeles, CA 90067           Marina Del Rey, CA 90292

**Principal Amount: $100,000.00 Date of Note: May 13th, 2011** PROMISE TO PAY. Neman Financial, LP ("General Partner") promises to pay to Dr. Firooz Pak("Investor"), or order, in lawful money of the United States of America, the principal amount of One Hundred Thousand & 00/100 Dollars ($100,000.00) together with Interest on the unpaid outstanding principal balance. Interest shall be Eleven Thousand & 00/100 Dollars ($11,000.00) in total.

PAYMENT. General Partner will pay this Investment in one payment of all outstanding principal plus all accrued unpaid Interest **on or before** August 13th, 2011. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid Interest; then to principal; then to any unpaid collection costs; and then to any late charges. General Partner will pay Investor at Investor's address shown above or at such other place as Investor may designate.

FIXED INTEREST RATE. The interest rate on this Note won't change for the period of the Investment; it will be at 11% for the entire duration of the Investment.

LATE CHARGE. If the payment is 10 days or more late, General Partner will be charged 10.000% of the regularly scheduled payment or $500.00, whichever is greater.

INTEREST AFTER DEFAULT. 'Upon default, the interest rate on this Note shall, If permitted under applicable law, Immediately Increase by adding a 7.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding Interest rate change that would have applied had there been no default.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note: .Payment,

Default. General Partner fails to make any payment when due under this Note.

Other Defaults. General Partner fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note.

Default in Favor of Third Parties. General Partner or any Guarantor defaults under any Investment, extension of credit, security agreement, purchase or sales agreement, including deposit accounts, with Investor. However, this Event of Default shall not apply if and if General Partner gives Investor written notice of the creditor or repay this Note or perform General Partner's obligations under this Note.

False Statements. Any warranty, representation or statement made or furnished to Investor by General Partner or on General Partner's behalf under this Note if false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Insolvency. The dissolution or termination of General Partner's existence as a going business, the Insolvency of General Partner, the appointment of a receiver for any part of General Partner's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against General Partner.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or foreclosure proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of General Partner or by any governmental agency against any collateral securing the Investment. This includes a garnishment of any of General Partner's accounts, including deposit accounts, with Investor. However, this Event of Default shall not apply if and if General Partner gives Investor written notice of the creditor or forfeiture proceeding and deposits with Investor monies or a surely bond for the creditor or forfeiture proceeding, In an amount determined by Investor, In this sale discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding *events* occurs with respect to any Guarantor on any of the indebtedness or any Guarantor dies or becomes incompetent revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

Change In Ownership. Any change in ownership of fifty-one percent (51%) or more of the common stock of Neman Financial LP. Adverse Change. A material adverse change occurs in General Partner's financial condition.

Cure Provisions. If any default, other than a default in payment Is curable, It may be cured if General Partner, after receiving written notice from Investor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) If the cure requires more Than fifteen (15) days, Immediately Initiates steps which Investor deems In Investor's sale discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

INVESTOR'S RIGHTS. Upon default, Investor may declare the entire unpaid principal balance under this Note and all accrued unpaid Interest Immediately due, and Then General Partner will pay that amount.

1 | P a g e



Exhibit 31 Page 9



1875 Century Park East•6th Floor• Los Angeles• California 90067
(310) 284-6859 Office • (310) 388-4653 Fax

ATTORNEYS' FEES; EXPENSES. Investor may hire or pay someone else to help collect this Note if General Partner does not pay. General Partner will pay Investor that amount. This includes, subject to any limits under applicable law, Investor's attorneys' fees' and Investor's legal expenses, whether or not there is a lawsuit, Including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or Injunction), and appeals. General Partner also will pay any court costs in addition to all other sums provided by law.

COLLATERAL. General Partner acknowledges this Note is secured by the following collateral: 20-unit condominium in San Diego, CA. The entire investment to buy the condominium in San Diego, CA will not exceed $9,000,000.00. General Partner is using 8,900,000.00 of the money available in the Neman Financial LP account to purchase the condominium along with the 100,000.00 from the investor. The 20-unit condominium is going to be stabilized and sold to a committed buyer General Partner has a relationship with.

**In addition to Neman Financial, General Partner agrees to be personally liable for all sums.**

ARBITRATION. General Partner and Investor agree that all disputes, claims and controversies between them whether Individual, joint, or class in nature; arising from this otherwise, including without contract and/or disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association In effect and the time the claim Is filed, upon request of either party; No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without Limitation, obtaining Injunctive for a temporally restraining order invoking a power of sale under any, deed of trust or mortgage; obtaining write of attachment or exercising any right to personal property, Including taking or disposing of such. Any disputes, claims, or controversies concerning the lawfulness, or exercise any right; concerning any collateral securing this Note, Including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided that no arbitrator shall have the right or the power to enforce restrain on any party. General Partner and Investor agree that In the event action for Judicial foreclosure; Pursuant to California Code of Civil Procedure Section 726, or any similar provision In any other state, the commencement of such Walling of constitution waver of the right to; arbitrate and the court shall refer to arbitration as much of such action, may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having Jurisdiction. This Note shall preclude any party from seeking equitable relief from a court of competent Jurisdict6ion. The statute of limitations, estoppels, waiver, latches, and Similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitral Investment provision.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon General Partner, and upon General Partner's heirs, personal representatives, successors and assigns, and shall insure to the benefit of Investors and successors and assigns.

GENERAL PROVISIONS.

The          obligations          under          this          Note          are          Joint          and          several.



1875 Century Park East, 6th Floor, Los Angeles, California 90067
(310) 284-6859 Office ο(310) 388-4653 Fax

"PRIOR TO SIGNING THIS NOTE, GENERAL PARTNER & INVESTOR READ AND UNDERSTOOD ALL THE PROVISIONS OF
THIS NOTE. GENERAL PARTNER & INVESTOR AGREE TO THE TERMS OF THE NOTE"
"GENERAL PARTNER & INVESTOR ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE."


GENERAL PARTNER:

Neman Financial, LP


BY:                                                                    5 / 13 / 11


MR. SHERVIN NEMAN, President/CEO of Neman Financial, LP



INVESTOR:

Dr. Firooz Pak

BY:

DR. FIROOZ PAK

**Exhibit 32**



1999 Avenue of the Stars₀ Ste. 2045₀ Los Angeles₀ California 90067
(310) 359-8675 Office ₀ (310) 388-4653 Fax

## PROMISSORY NOTE

| | |
|---|---|
| General Partner: Neman Financial LP<br>1999 Ave. of the Stars, Ste. 2045<br>Los Angeles, CA 90067 | Investor: Dr. Firooz Pak<br><br>Marina Del Rey, CA 90292 |

Principal Amount: $100,000.00 Date of Note: October 21st, 2011 PROMISE TO PAY. Neman Financial, LP ("General Partner") promises to pay to Dr. Firooz Pak ("Investor"), or order, in lawful money of the United States of America, the principal amount of One Hundred Thousand & 00/100 Dollars ($100,000.00) together with Interest on the unpaid outstanding principal balance. Interest shall be Twelve Thousand & 00/100 Dollars ($12,000.00) in total.

PAYMENT. General Partner will pay this Investment in one payment of all outstanding principal plus all accrued unpaid Interest ON OR BEFORE April 21st, 2011. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid Interest; then to principal; then to any unpaid collection costs; and then to any late charges. General Partner will pay Investor at Investor's address shown above or at such other place as Investor may designate.

FIXED INTEREST RATE. The interest rate on this Note won't change for the period of the Investment; it will be at 12% for the entire duration of the Investment.

LATE CHARGE. If the payment is 10 days or more late, General Partner will be charged 10.000% of the regularly scheduled payment or $500.00, whichever is greater.

INTEREST AFTER DEFAULT. "Upon default, the interest rate on this Note shall, If permitted under applicable law, Immediately Increase by adding a 7.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding Interest rate change that would have applied had there been no default.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note: .Payment,

   Default. General Partner fails to make any payment when due under this Note.

   Other Defaults. General Partner fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note.

   Default in Favor of Third Parties. General Partner or any Guarantor defaults under any Investment, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of General Partner's property or General Partner's ability to repay this Note or perform General Partner's obligations under this Note.

False Statements. Any warranty, representation or statement made or furnished to Investor by General Partner or on General Partner's behalf under this Note if false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

   Insolvency. The dissolution or termination of General Partner's existence as a going business, the Insolvency of General Partner, the appointment of a receiver for any part of General Partner's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against General Partner.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or foreclosure proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of General Partner or by any governmental agency against any collateral securing the Investment. This includes a garnishment of any of General Partner's accounts, including deposit accounts, with Investor. However, this Event of Default shall not apply if and if General Partner gives Investor written notice of the creditor or forfeiture proceeding and deposits with Investor monies or a surety bond for the creditor or forfeiture proceeding. In an amount determined by Investor, In this sale discretion, as being an adequate reserve or bond for the dispute.

   Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor on any of the indebtedness or any Guarantor dies or becomes incompetent revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note.

   Change In Ownership. Any change in ownership of fifty-one percent (51%) or more of the common stock of Neman Financial LP. Adverse Change. A material adverse change occurs in General Partner's financial condition.

   Cure Provisions. If any default, other than a default in payment Is curable, It may be cured if General Partner, after receiving written notice from Investor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) If the cure requires more Than fifteen (15) days, Immediately Initiates steps which Investor deems In Investor's sale discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

INVESTOR'S RIGHTS. Upon default, Investor may declare the entire unpaid principal balance under this Note and all accrued unpaid Interest Immediately due, and Then General Partner will pay that amount.



1 | P a g e



1999 Avenue of the Stars Ste. 2045 Los Angeles California 90067
(310) 359-8675 Office (310) 388-4653 Fax

ATTORNEYS' FEES; EXPENSES. Investor may hire or pay someone else to help collect this Note if General Partner does not pay. General Partner will pay Investor that amount. This Includes, subject to any limits under applicable law, Investor's attorneys' fees' and Investor's legal expenses, whether or not there is a lawsuit, Including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or Injunction), and appeals. General Partner also will pay any court costs in addition to all other sums provided by law.

COLLATERAL. General Partner acknowledges this Note is secured by the following collateral: 300 Single Family Residences in CA. The entire investment to buy the 300 Single Family Residences in CA will not exceed 30,000,000.00. General Partner is using 29,900,000.00 of the money available in the Neman Financial LP account to purchase the 300 Single Family Residences in CA along with the 100,000.00 from the investor. The 300 Single Family Residences in CA is going to be stabilized and sold to a committed buyer General Partner has a relationship with.

**In addition to Neman Financial L.P., General Partner agrees to be personally liable for all sums.**

ARBITRATION. General Partner and Investor agree that all disputes, claims and controversies between them whether Individual, joint, or class in nature; arising from this otherwise, including without contract and/or disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association In effect and the time the claim Is filed, upon request of either party; No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without Limitation, obtaining Injunctive for a temporally restraining order invoking a power of sale under any, deed of trust or mortgage; obtaining write of attachment or exercising any right to personal property, Including taking or disposing of such. Any disputes, claims, or controversies concerning the lawfulness, or exercise any right; concerning any collateral securing this Note, Including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided that no arbitrator shall have the right or the power to enforce restrain on any party. General Partner and Investor agree that In the event action for Judicial foreclosure; Pursuant to California Code of Civil Procedure Section 726, or any similar provision In any other state, the commencement of such Walling of constitution waver of the right to; arbitrate and the court shall refer to arbitration as much of such action, may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having Jurisdiction. This Note shall preclude any party from seeking equitable relief from a court of competent Jurisdict6ion. The statute of limitations, estoppels, waiver, latches, and Similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitral Investment provision.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon General Partner, and upon General Partner's heirs, personal representatives, successors and assigns, and shall insure to the benefit of Investors and successors and assigns.

GENERAL PROVISIONS.

The        obligations        under        this        Note        are        Joint        and        several.

S√

Exhibit 32 Page 13



1875 Century Park East∘6th Floor∘ Los Angeles∘ California 90067
(310) 284-6859 Office ∘(310) 388-4653 Fax

"PRIOR TO SIGNING THIS NOTE, GENERAL PARTNER & INVESTOR READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. GENERAL PARTNER & INVESTOR AGREE TO THE TERMS OF THE NOTE"
"GENERAL PARTNER & INVESTOR ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE."

**GENERAL PARTNER:**

Neman Financial, LP

BY:                                                         10/21/2011

MR. SHERVIN NEMAN, President/CEO of Neman Financial, LP

**INVESTOR:**

Dr. firooz pak

By:

DR. FIROOZ PAK

Exhibit 32 Page 14