ORIGINAL

1  MOLLY M. WHITE, Cal. Bar No. 171448
   Email: whitem@sec.gov
2  J. CINDY ESON, Cal. Bar No. 219782
   Email: esonjc@sec.gov
3
   Attorneys for Plaintiff
4  Securities and Exchange Commission
   Michele Wein Layne, Associate Regional Director
5  John W. Berry, Regional Trial Counsel
   5670 Wilshire Boulevard, 11th Floor
6  Los Angeles, California 90036
   Telephone: (323) 965-3998
7  Facsimile: (323) 965-3908

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11  SECURITIES AND EXCHANGE            Case No. CV12-03142 JHN (PLAx)
    COMMISSION,
12                                     DECLARATION OF HAMID R.
             Plaintiff,                MIRSHOJAE
13
         vs.
14
    SHERVIN NEMAN, and NEMAN
15  FINANCIAL, INC.,

16           Defendants,

17  CASSANDRA C. NEMAN,

18           Relief Defendant.

19

20

21

22

23

24

25

26

27

28

I, Hamid R. Mirshojae, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.     I have personal knowledge of the matters set forth herein and, if called as a witness, could and would competently testify under oath hereto.

2.     I submit this declaration at the request of the United States Securities and Exchange Commission ("Commission").

3.     I am 48 years old and reside in Calabasas, CA.

4.     I am an osteopathic physician specializing in family medicine. I have been licensed in the State of California since 1994 and maintain my own medical practice in Woodland Hills, CA.

5.     I met Shervin Neman (formerly known as Shervin Davatgarzadeh) several years ago while he was working at First Commerce Bank.

6.     In approximately June 2010, I met with Mr. Neman and he told me that he was now a hedge fund manager. He gave me his business card, which stated that he was CEO of Neman Financial in Los Angeles, CA. A true and correct copy of the business card I received from Mr. Neman is attached hereto as Government Exhibit 41.

7.     Mr. Neman asked me to invest in foreclosed homes in Orange County, CA. Mr. Neman said that he had an agreement with Bank of America to buy the homes and that he already had a buyer lined up to purchase the properties. He said I would earn a 16% to 18% return in 60 days. Mr. Neman said he could pay such

1

returns by buying the properties in bulk and then quickly selling them to another buyer.

8.     Mr. Neman said the total investment in the foreclosed properties would be approximately $2.5 to $3 million and that I would be investing my money in Mr. Neman's hedge fund along with other investors.

9.     Mr. Neman also told me that he had previously worked with prominent and wealthy members of the Persian community, including Jimmy Delshad, the former mayor of Beverly Hills, CA.  Learning that Mr. Neman was associated with such a distinguished member of the Persian community was important in making my investment decision.

10.    Based on Mr. Neman's representations and the returns he promised, I invested $50,000 in Mr. Neman's hedge fund, Neman Financial LP, for the foreclosed properties in Orange County.  I sent a personal check for $50,000, made payable to Neman Financial, LP, to Mr. Neman's Los Angeles business address. Within 30 days, I received a $55,000 check from Mr. Neman, which he said represented the return of my principal plus a 10% profit.  A true and correct copy of the check I received from Mr. Neman is attached hereto as Government Exhibit 7.

11.     This first profitable investment gave me confidence in Mr. Neman's abilities as a hedge fund manager, and as a result, I felt comfortable investing larger sums of money with him.

12.     A few months later, in September 2010, Mr. Neman approached me about another opportunity to invest in 20 single-family residences in Orange County owned by Bank of America. He said he could guarantee that I would earn an 18% return within 60 days. Mr. Neman also approached my brother and my brother's attorney about investing, but to my knowledge, neither one invested with him.

13.     Based on Mr. Neman's representations and the promise of a guaranteed return, I decided to invest $350,000 in the Orange County residences through Neman Financial, LP.

14.     On or about September 21, 2010, Mr. Neman faxed me a promissory note he had signed as the general partner of Neman Financial LP, promising to repay my $350,000 principal and $63,000 in interest for a total payment of $413,000 by November 20, 2010. According to the promissory note, the total investment in the 20 single-family houses would not exceed $3.4 million, my $350,000 was secured by the 20 houses, and my funds were being invested along with $3,050,000 from Neman Financial, LP. A true and correct copy of the signed

promissory note I received from Mr. Neman is attached hereto as Government Exhibit 3.

15.     I then sent a personal check in the amount of $350,000 made payable to Neman Financial, LP to Mr. Neman's Los Angeles business address. A true and correct copy of the check I sent to Mr. Neman is attached hereto as Government Exhibit 42. In the memo section of the check, I noted that the investment was for "20 Houses in O.C."

16.     On or about November 20, 2010, I contacted Mr. Neman to collect the $413,000 due from Neman Financial, LP.

17.     A couple of weeks later, I received from Mr. Neman a check in the amount of $413,000 drawn on a Neman Financial, LP account at JPMorgan Chase Bank. The check, dated December 3, 2010, was made payable to my bank, Bank of the West, with a notation in the memo section that stated, "Dr. Hamid Mirshojae Deal." A true and correct copy of the check I received from Mr. Neman is attached hereto as Government Exhibit 6.

18.     I deposited the check from Neman Financial, LP into my account at Bank of the West on December 6, 2010. Two days later, on December 8, 2010, my bank sent me a notice that the $413,000 check from Mr. Neman had bounced and that I had been assessed a fee. A true and correct copy of the notice I received from my bank is attached hereto as Government Exhibit 43.

4

19.    Once I received the notice, I immediately tried but was unable to contact Mr. Neman.  He would not return my phone calls.  Shortly thereafter, I filed a police report and contacted my attorney, Cameron Y. Brock, to help me get my money back.  Mr. Brock demanded that Mr. Neman return my principal investment and the promised interest.

20.    In or about February 2011, I entered into a settlement agreement with Neman Financial.  Mr. Neman returned my $350,000 principal and later paid me another $10,000.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed this **27** day of March 2012 in Calabasas, CA.



Hamid R. Mirshojae

  

1875 Century Park East•6th Floor• Los Angeles• California 90067
(310) 284-6859 Office • (310) 388-4653 Fax

## PROMISSORY NOTE

General Partner:   Neman Financial LP            Investor:   Dr. Hamid Mirshojae
1875 Century Park East
Los Angeles, CA 90067                    Calabasas, CA 91302

**Principal Amount: $350,000.00 Date of Note: September 20th, 2010** PROMISE TO PAY. Neman Financial, LP ("General Partner") promises to pay to Dr. Hamid Mirshojae("Investor"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Fifty Thousand & 00/100 Dollars ($350,000.00) together with Interest on the unpaid outstanding principal balance. Interest shall be Sixty Three Thousand & 00/100 Dollars ($63,000.00) in total.

PAYMENT. General Partner will pay this Investment in one payment of all outstanding principal plus all accrued unpaid Interest on November 20th, 2010. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid Interest; then to principal; then to any unpaid collection costs; and then to any late charges. General Partner will pay Investor at Investor's address shown above or at such other place as Investor may designate.

FIXED INTEREST RATE. The interest rate on this Note won't change for the period of the Investment; it will be at 18% for the entire duration of the Investment.

LATE CHARGE. If the payment is 10 days or more late, General Partner will be charged 10.000% of the regularly scheduled payment or $500.00, whichever is greater.

INTEREST AFTER DEFAULT. Upon default, the interest rate on this Note shall, If permitted under applicable law, Immediately increase by adding a 7.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding Interest rate change that would have applied had there been no default.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note: .Payment,

   Default. General Partner fails to make any payment when due under this Note.

   Other Defaults. General Partner fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note.

   Default in Favor of Third Parties. General Partner or any Guarantor defaults under any Investment, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of General Partner's property or General Partner's ability to repay this Note or perform General Partner's obligations under this Note.

False Statements. Any warranty, representation or statement made or furnished to Investor by General Partner or on General Partner's behalf under this Note if false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

   Insolvency. The dissolution or termination of General Partner's existence as a going business, the Insolvency of General Partner, the appointment of a receiver for any part of General Partner's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against General Partner.

Creditor or Forfeiture Proceedings. Commencement of foreclosure or foreclosure proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of General Partner or by any governmental agency against any collateral securing the Investment. This includes a garnishment of any of General Partner's accounts, including deposit accounts, with Investor. However, this Event of Default shall not apply if and if General Partner gives Investor written notice of the creditor or forfeiture proceeding and deposits with Investor monies or a surety bond for the creditor or forfeiture proceeding, In an amount determined by Investor, In this sale discretion, as being an adequate reserve or bond for the dispute.

      Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor on any of the indebtedness or any Guarantor dies or becomes incompetent revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

      Change In Ownership. Any change in ownership of fifty-one percent (51%) or more of the common stock of Neman Financial LP. Adverse Change. A material adverse change occurs in General Partner's financial condition.

      Cure Provisions. If any default, other than a default in payment Is curable, it may be cured if General Partner, after receiving written notice from Investor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) If the cure requires more Than fifteen (15) days, Immediately Initiates steps which Investor deems In Investor's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

   INVESTOR'S RIGHTS. Upon default, Investor may declare the entire unpaid principal balance under this Note and all accrued unpaid Interest Immediately due, and Then General Partner will pay that amount.

1 | P a g e



Exhibit 3 Page 6



**1875 Century Park East,6th Floor, Los Angeles, California 90067**
**(310) 284-6859 Office • (310) 388-4653 Fax**

ATTORNEYS' FEES; EXPENSES. Investor may hire or pay someone else to help collect this Note if General Partner does not pay. General Partner will pay Investor that amount. This includes, subject to any limits under applicable law, Investor's attorneys' fees' and Investor's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or Injunction), and appeals. General Partner also will pay any court costs in addition to all other sums provided by law.

COLLATERAL. General Partner acknowledges this Note is secured by the following collateral: 20 Single Family Residents in Orange County, CA. The entire investment to buy the houses in Orange County, CA will not exceed $3,400,000.00. General Partner is using 3,050,000.00 of the money available in the Neman Financial LP account to purchase the houses along with the 350,000.00 from the investor. The houses are going to be stabilized and sold to a committed buyer General Partner has a relationship with.

**General Partner agrees to be liable for all sums.**

ARBITRATION. General Partner and Investor agree that all disputes, claims and controversies between them whether individual, joint, or class in nature; arising from this otherwise, including without contract and/or disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect and the time the claim is filed, upon request of either party; No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without Limitation, obtaining injunctive for a temporarily restraining order invoking a power of sale under any, deed of trust or mortgage; obtaining writs of attachment or exercising any right to personal property, including taking or disposing of such. Any disputes, claims, or controversies concerning the lawfulness, or exercise any right; concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided that no arbitrator shall have the right or the power to enforce restrain on any party. General Partner and Investor agree that in the event action for Judicial foreclosure; Pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such Waiting of constitution waiver of the right to; arbitrate and the court shall refer to arbitration as much of such action, may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. This Note shall preclude any party from seeking equitable relief from a court of competent Jurisdiction. The statute of limitations, estoppels, waiver, laches, and Similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitral investment provision,

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon General Partner, and upon General Partner's heirs, personal representatives, successors and assigns, and shall insure to the benefit of Investors and successors and assigns.

**GENERAL PROVISIONS.**

The        obligations        .under        this        Note        are        Joint        and        several.

Exhibit 3 Page 7



1875 Century Park East«6th Floor» Los Angeles» California 90067
(310) 284-6859 Office »(310) 388-4653 Fax

"PRIOR TO SIGNING THIS NOTE, GENERAL PARTNER & INVESTOR READ AND UNDERSTOOD ALL THE PROVISIONS OF
THIS NOTE. GENERAL PARTNER & INVESTOR AGREE TO THE TERMS OF THE NOTE"
"GENERAL PARTNER & INVESTOR ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE."

GENERAL PARTNER:

Neman Financial, LP

BY: _____          09/21/2010

MR. SHERVIN NEMAN, President/CEO of Neman Financial, LP

INVESTOR:

Dr. Hamid Mirshojae

By: _____          09/21/2010

DR. HAMID MIRSHOJAE

BANK OF THE WEST ®

EQUITY CHOICE
ACCOUNT NUMBER          0194
STATEMENT DATE   11/08/2010
CUSTOMER SERVICE NUMBER   1 (800) 828-7502

MINIMUM PAYMENT MUST BE RECEIVED BY 12/01/2010
PLEASE MAKE CHECK PAYABLE TO BANK OF THE WEST
AMOUNT DUE $   1,091.28

☐ CHECK HERE FOR ADDRESS/PHONE CHANGES.   NOTE CHANGES ON REVERSE OF COUPON.

HAMID R MIRSHOJAE
& JANG MIRSHOJAE
CALABASAS, CA 91302

8181
3,107140
Shumo-

Feizam

⸨50 2 2000 ⸩0⸨    ⸨0494⸩ 70

---

NEMAN FINANCIAL LP
1875 CENTURY PARK EAST, SUITE 600
LOS ANGELES, CA 90067

43266
DATE  12/3/2010

PAY TO THE
ORDER OF:   Bank of the West            $ 413,000.00

Four hundred and thirteen thousand DOLLARS

J.P.Morgan
JPMorgan Chase Bank, N.A.
Los Angeles, California

MEMO  Dr. Hamid Mirshojaie Deal

⸨322271627⸩:   8⸨491964156⸩ 1004

1004

(signature)

U/3/...



Exhibit 6 Page 9

SHERVIN DAVATGARZADEH
LOS ANGELES, CA 90035-3540

1018

8/2/10

Pay to the Order of  Mr. Hamid Mashnajae   $ 55000

Fifty five thousand & 00/100   Dollars

Wells Fargo Bank, N.A.
California
wellsfargo.com

IMAGE VERIFIED ON STORE OPS IMAGE BROWSER

SIG VERIFIED ON SVT

For

⑈122000247⑈    8254⑈ 01018

REQUEST 0000502516000000 55000.00
ROLL ECIA  20100809 000006722884552
JOB ECIA P ACCT        8254
REQUESTOR A910674
3491333 02/13/2012

Subpoena Processing East
Y1372-110
Philadelphia PA 19101



Exhibit 7 Page 10

Office: (310) 284-6859
Direct: (310) 496-1873
Fax:    (310) 388-4653

# NEMAN FINANCIAL
Shervin Neman
CEO

1875 Century Park East, Ste 700
Los Angeles, CA 90067

Shervin@NemanFinancial.com
http://www.NemanFinancial.com



Exhibit 41  Page 11





Exhibit 42 Page 12

OUR RECORDS INDICATE THAT YOUR LOAN PAYMENT WAS NOT MADE DUE TO A RETURNED
ITEM FROM YOUR DEPOSIT ACCOUNT.  PLEASE RETURN THIS NOTICE WITH THE TOTAL
AMOUNT DUE AS SHOWN BELOW.

A FEE OF   15.00 HAS BEEN ASSESSED TO YOUR ACCOUNT.

LOAN NUMBER ████0194       AMOUNT OF RETURNED ITEM       413,000.00

HAMID R  MIRSHOJAE
████████
CALABASAS, CA  91302

DATE OF NOTICE 12/08/10

BANK OF THE WEST
PO BOX 4024
ALAMEDA, CA  94501-0424



Exhibit 43 Page 13