ORIGINAL

1 │ MOLLY M. WHITE, Cal. Bar No. 171448
│ Email: whitem@sec.gov
2 │ J. CINDY ESON, Cal. Bar No. 219782
│ Email: esonjc@sec.gov
3 │
│ Attorneys for Plaintiff
4 │ Securities and Exchange Commission
│ Michele Wein Layne, Associate Regional Director
5 │ John W. Berry, Regional Trial Counsel
│ 5670 Wilshire Boulevard, 11th Floor
6 │ Los Angeles, California 90036
│ Telephone: (323) 965-3998
7 │ Facsimile: (323) 965-3908

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11 │ SECURITIES AND EXCHANGE      Case No. CV12-03142 MWF (PLAx)
│ COMMISSION,
12 │                              DECLARATION OF SEPEHR
│            Plaintiff,          KAMJOO
13 │
│      vs.
14 │
│ SHERVIN NEMAN, and NEMAN
15 │ FINANCIAL, INC.,
16 │            Defendants,
17 │ CASSANDRA C. NEMAN,
18 │            Relief Defendant.
19
20
21
22
23
24
25
26
27
28

I, Sepehr Kamjoo, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.    I have personal knowledge of the matters set forth herein and, if called as a witness, could and would competently testify under oath hereto.

2.    I submit this declaration at the request of the United States Securities and Exchange Commission ("Commission").

3.    I am 39 years old and reside in Los Angeles, CA.

4.    I am a certified public accountant and have been licensed in the State of California since 1995. I own my own public accounting firm located in Los Angeles, CA.

5.    I have known Shervin Neman (formerly Shervin Davatgarzadeh) professionally for approximately two years. When we met, Mr. Neman told me he was working at First Commerce Bank and suggested that we do business together by referring clients to each other.

6.    In 2010, Mr. Neman told me he had left First Commerce Bank and started his own investment company. Since that time, I have referred a couple of my clients to Mr. Neman, including Dr. Firooz Pak.

7.    In or about June 2011, Mr. Neman approached me about purchasing shares of Facebook. Mr. Neman told me that he had connections with a broker who was able to get Facebook shares and that he already had purchased one million shares of Facebook at a price of $28.50 per share in a private transaction.

8.     Mr. Neman then offered to sell me some of the Facebook shares he had purchased.  I agreed to purchase $35,625 worth of Facebook shares at a price of $28.50 per share (the same price Mr. Neman said he paid).  Mr. Neman told me that he would hold the shares until Facebook went public and then either sell the shares, distributing any profits to me, or transfer the shares to me.  I left it up to Mr. Neman to decide whether to sell my Facebook shares for a profit or simply transfer the shares to me.

9.     Mr. Neman then e-mailed me a Stock Purchase Agreement, which I signed on June 17, 2011.  A true and correct copy the Stock Purchase Agreement is attached hereto as Government Exhibit 33.

10.     I then sent Mr. Neman a personal check for the full purchase price of $35,625 and made the check payable to "Shervin Neman" as Mr. Neman had instructed me to do.  A true and correct copy of the personal check I gave to Mr. Neman is attached hereto as Government Exhibit 44.

11.     After my investment in the Facebook shares, I spoke with Mr. Neman on the telephone one or two times a week.  I usually asked him about the current price of Facebook shares and what price he thought the stock would be going to once it went public.

12.     On February 22, 2012, I received a letter from the Commission staff regarding my investments with Mr. Neman.  A short time later, Mr. Neman called

2

to tell me that he was becoming registered and getting his "66 license." I then asked Mr. Neman about the letter from the Commission staff. He said that it was "routine" and "customary" for the Commission to contact investors when someone applies for a license.

13.     Despite Mr. Neman's assurances, I demanded that he return my principal investment of $35,625, which he did in the form of a cashier's check from JPMorgan Chase Bank.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _31_ day of March 2012 in Los Angeles, CA.

Sepehr Kamjoo



**NEMAN FINANCIAL**

1999 Avenue of the Stars○Ste. 2045○ Los Angeles○ California 90067
(310) 359-8675 Office ○ (310) 388-4653 Fax

## STOCK PURCHASE AGREEMENT

THIS AGREEMENT is made and entered into this 17th day of June, 2011, by and between Mr. Shervin Neman, ("General Partner") and Mr. Sepehr Kamjoo, ("Investor");

WHEREAS, the General Partner is the buyer of the Facebook shares,

WHEREAS, the Investor desires to participate in the purchase of the private offering of Facebook shares and the General Partner desires to Purchase the shares through an individual referred by a financial institution, upon the terms and subject to the conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, and in order to consummate the purchase and the sale of the shares aforementioned, it is hereby agreed as follows:

1. PURCHASE AND SALE: Subject to the terms and conditions hereinafter set forth, General Partner shall buy ($28.50/share and a total of 1 mil shares), hold and ultimately sell the shares and after completing the transaction ("Closing"), the General Partner shall distribute investor's money.

2. AMOUNT AND PAYMENT OF PURCHASE PRICE. The total consideration and method of payment thereof are fully set out in Exhibit "A" attached hereto and made a part hereof.

3. REPRESENTATIONS AND WARRANTIES OF General Partner. General Partner hereby warrants and represents:

(a) Organization and Standing. LP is duly organized, validly existing and in good standing under the laws of the State of CA and has the corporate power and authority to carry on its business as it is now being conducted.



GOVERNMENT
EXHIBIT 33

Exhibit 33 Page 4



1999 Avenue of the Stars, Ste. 2045, Los Angeles, California 90067
(310) 359-8675 Office • (310) 388-4653 Fax

Signed, sealed and delivered in the presence of:

By: _Kamoo Spc_

By: _____                    _6 / 17 / 11_

**EXHIBIT "A" AMOUNT AND PAYMENT OF PURCHASE PRICE**

(a) Consideration. As total consideration for the purchase and sale of the Facebook shares, pursuant to this Agreement, the Investor shall send the General Partner the sum of $35,625.00 Dollars (Thirty Five Thousand Six Hundred Twenty Five Dollars), such total consideration to be referred to in this Agreement as the "Purchase Price".

(b) Payment. The Purchase Price shall be paid as follows:
i. The sum of $35,625.00 Dollars (Thirty Five Thousand Six Hundred Twenty Five Dollars) to be delivered to General partner upon the execution of this Agreement.

Exhibit 33 Page 5

21-Jan-12                                                          20Jan12-259

**THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION**
**GROUP ID G20Jan12-259**
Sequence number 003090457866  Posting date 17-JUN-11

SEPEHR KAMJOO                                          1969
LOS ANGELES, CA 90025

Date  6/17/11

Pay to the
Order of  Shervin Noman                    | $ 35,625⁰⁰

Thirty Five thousand six hundred twenty Five Dollars

WELLS FARGO Bank, N.A.
California
wellsfargo.com

Live. Laugh. Love.

Puror 1,250 sh/s of
for Facebook at 28.50/shr           Konjoo Sep

⑆122000247⑆          3000⑈ 01969

Ⅱ: JPMorganChase Bank 061706 7410629~      0477

AcctNum: 00000000    3000 Amount: 000000003562500
Xerno: 0000000000 PostDate: 20110617 Sequence: 003090457866
BankNum: 0703 AppCode: 0090 Field4: 0000 ImageStat: 05
UDK: 070311061700309045786 BOFD: 111900057 CapSRC: BY
TranCode: 001969 RouteTran: 12200024  DocType: B
EntryNum: 3733 ItemType: P

Exhibit 44 Page 6

